**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Jun Fang, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:24-cv-08963 |
| | ) |
| v. | ) Dist. Judge Lindsay C. Jenkins |
| | ) |
| The Partnerships and | ) Mag. Judge Heather K. McShain |
| Unincorporated Associations | ) |
| Identified on Schedule "A", | ) |
| | ) |
| Defendants. | ) |

**<u>Memorandum in Support of Plaintiff's
Motion for Entry of Default and Default Judgment
Against Defendant No. 63 (KF Store)</u>**

Plaintiff Jun Fang ("Plaintiff" or "Fang"), by and through Plaintiff's undersigned counsel, submits the following memorandum in support of Plaintiff's Motion for Entry of Default and Default Judgment under Federal Rule of Civil Procedure 55 against Defendant KF Store, which had been identified in Schedule A as Defendant No. 63 and additional information about which is provided on Exhibit A attached hereto ("Defaulting Defendant"), based on Plaintiff's actions for trademark infringement, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act.

### I.  Statement of Facts

Since 2019, Plaintiff has been engaged in the market of selling YINGTE branded pet wellness products (collectively, " YINGTE Products"). [Dkt. 1 at ¶ 17]. Plaintiff's products are well-recognized and popular pet wellness items on the market and Plaintiff has spent considerable resources growing and protecting Plaintiff's YINGTE brand. [Dkt. 1 at ¶ 18]. Plaintiff is the owner of all rights, title, and interest in and to the YINGTE Mark which Plaintiff uses in connection with

the marketing of Plaintiff's YINGTE Products and has a Federal trademark registration with the United States Patent and Trademark Office: Reg. No. 6,718,955. [Dkt. 1 at ¶ 20].

The Defaulting Defendant conducts business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online marketplace operating under at least the online storefront identified in Exhibit A (together with any other online storefront operated by Defaulting Defendant, "Defendant Online Stores"). [Dkt. 1 at ¶¶ 1–3]. Defaulting Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and unlicensed knock-off products, including pet wellness products that use infringing versions of Plaintiff's YINGTE Mark ("Infringing YINGTE Products") to consumers in the United States, including the State of Illinois. [*Id*.]. Additional factual assertions regarding the Defaulting Defendant articulated in the Complaint are incorporated herein. [Dkt. 1 at ¶¶ 29–46].

Plaintiff filed this action on September 26, 2024, [Dkt. 1], and filed Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order [Dkt. 10] ("TRO") on November 5, 2024, which was granted with respect to the Defaulting Defendant on November 6, 2024. [Dkt. 17]. The TRO was subsequently converted into a Preliminary Injunction [Dkt. 26] with respect to the Defaulting Defendant. The TRO permitted Plaintiff to complete service of process to the Defaulting Defendant by electronically publishing a link to the Complaint, the TRO, and other relevant documentation on a website and sending an email to the email addresses provided for the Defaulting Defendant by the third parties that operate the online ecommerce marketplaces. The Defaulting Defendant was properly served with process on December 2, 2024. [*See* Dkt. 22].

Defaulting Defendant has not filed an Answer or otherwise pleaded in this action. [Zlatkin Decl. at ¶ 2].

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment finding that Defaulting Defendant is liable on all counts of Plaintiff's Complaint. FED. R. CIV. P. 55(a), (b)(2). Plaintiff further seeks an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) of willful counterfeiting trademark infringement against the Defaulting Defendant for Defaulting Defendant's unauthorized use of the Plaintiff's registered YINGTE Mark on infringing products sold through each of the Defendant Online Stores. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendant from selling Infringing YINGTE Products and an Order that all assets in Defaulting Defendant's financial accounts operated by PayPal, Inc., Amazon, Temu, Shein, AliPay, Wish/ContextLogic, eBay, Walmart, Payoneer, and Joom, as well as any newly-discovered assets, be transferred to Plaintiff.

## II. Argument

### a. Jurisdiction and Venue are Proper in this Court.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.* and 28 U.S.C. §§ 1331, 1338(a)-(b). This Court has jurisdiction over the claims in this action under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defaulting Defendant since the Defaulting Defendant directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business with this

Judicial District. *See*, [Dkt. 1 at ¶ 8]; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) ("without benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction" and all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, commercial online marketplace accounts operating under the Defendant Online Stores, the Defaulting Defendant has targeted sales to Illinois residents by operating online stores which offer shipping to the United States, including within Illinois and this judicial district, offered to accept payment in U.S. dollars, and offered for sale and/or sold Infringing YINGTE Products to residents of Illinois. [Dkt. 1 at ¶ 8]; [Dkt. 7-1 at 2–3, ¶¶ 7–9]. Personal jurisdiction exists over the Defaulting Defendant because Defaulting Defendant directly targets its business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendant is reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Online Stores through which Illinois residents can purchase Infringing YINGTE Products. *uBID*, 623 F.3d at 423-24, 433; *see Monster Energy Co. v. Wenshang*, 136 F. Supp. 3d 387, 907 (N.D. Ill. 2015); *Deckers Outdoor Corp. v. Does 1-55*, No. 11-cv-00010, 2011 WL 4929036, at *3 (N.D. Ill. Oct. 14, 2011).

    **b. Plaintiff has met the Requirement for Entry of Default.**

Under Federal rules, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). On September 26, 2024, Plaintiff filed the Complaint alleging Federal Trademark Infringement under 15 U.S.C. § 1114 (Count I), False Designation of Origin, Passing Off, and Unfair Competition, 15 U.S.C. § 1125(a) (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

(Count III). [Dkt. 1]. The Defaulting Defendant was all served with process in accordance with the TRO on December 2, 2024. (Schedule A); [Dkt. 22]. Despite having been served with process, none of the Defaulting Defendant has filed an answer or otherwise pleaded in this action. [Zlatkin Decl. at ¶ 2]. Upon information and belief, the Defaulting Defendant is not active-duty members of the U.S. armed forces. [Zlatkin Decl. at ¶ 3]. Accordingly, Plaintiff asks for entry of default against the Defaulting Defendant pursuant to FED. R. CIV. P. 55(a).

### c. Plaintiff has met the Requirements for Entry of Default Judgment.

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that the Defaulting Defendant is liable to Plaintiff on each cause of action alleged in the Complaint. *Deckers Outdoor Corp.*, 2011 WL 4929036, at *2, *citing*, *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

As noted above, Plaintiff served Defaulting Defendant on December 2, 2024. [Dkt 22]. Well more than twenty-one (21) days have passed since the Defaulting Defendant was served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendant as required under federal rules. FED. R. CIV. P. 12(a)(1)(A)(i). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, Plaintiff requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful counterfeiting against the Defaulting Defendant for its infringing use of the Plaintiff's YINGTE mark on infringing products, and listings therefor, sold through the Defendant Online Stores. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendant from selling Infringing

YINGTE Products, and an order that all assets in Defaulting Defendant's financial accounts operated by Amazon, Temu, Shein, Walmart, and any newly-identified accounts be transferred to Plaintiff.

To properly plead a claim of trademark infringement and counterfeiting under the Lanham Act, a plaintiff must allege that: (i) the plaintiff's mark is distinctive enough to be worthy of protection; and (ii) defendant's unauthorized use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000)). This is the same test that is used for a false designation of origin claim under the Lanham Act and claims under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq. See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999); *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998); *Deckers Outdoor Corp. v. Does 1-100*, No. 12 C 10006, 2013 WL 169998, at *2 (N.D. Ill. Jan. 16, 2013).

Plaintiff alleges in the Complaint that Plaintiff is the exclusive owner of the federally registered YINGTE Mark and that Defaulting Defendant has sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising, products using counterfeit reproductions of the YINGTE Mark, that Defaulting Defendant has knowledge of Plaintiff's rights in the YINGTE Mark, that Defaulting Defendant is not authorized to use the YINGTE Mark for any reason, and that Defaulting Defendant's use of the YINGTE Mark causes a likelihood of confusion. [Dkt. 1 at ¶¶ 47–56].

Plaintiff also alleged in the Complaint that Defaulting Defendant is using the YINGTE Mark on the Infringing YINGTE Products. [Dkt. 1 at ¶¶ 52–53]. As such, this creates a likelihood

of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defaulting Defendant's Infringing YINGTE Products by Plaintiff. [Dkt. 1 at ¶ 53]. Plaintiff further alleges in the Complaint that Defaulting Defendant has engaged in acts violating Illinois law including, but not limited to, passing off their Infringing YINGTE Products as those of Plaintiff's, causing a likelihood of confusion or association with genuine YINGTE Products, representing that their Infringing YINGTE Products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public. [Dkt. 1 at ¶¶ 57-65].

Because the Defaulting Defendant has failed to answer or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* FED. R. CIV. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff requests entry of judgment with respect to Counts I, II, and III for willful counterfeiting of Plaintiff trademark, false designation of origin, and willful violation of the Illinois Uniform Deceptive Trade Practices Act against the Defaulting Defendant.

### d. Default against some, but not all, Defendants is appropriate under Federal Rule of Civil Procedure 54(b).

Rule 54(b) gives the Court discretion to enter final judgement "as to one or more, but fewer than all," parties if the Court "expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(B); *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1258 (7th Cir. 1980). In *In re Uranium Antitrust*, the Seventh Circuit limited the application of *Frow v. De La Vega*, 82 U.S. 552, 21 L. Ed. 60 (1872) to cases "where the liability of one defendant necessarily depends upon the liability of the others." *In re Uranium Antitrust Litig.*, 617 F.2d at 1258, *citing*, *Int'l Controls Corp. v.*

*Vesco*, 535 F.2d 742, 746-47 n.4 (2d Cir. 1976) (concluding that "Frow does not preclude the entry of default judgment against a group of nine defaulters prior to adjudication on the merits as to the remaining defendants, where liability is joint and several."); *Douglas v. Metro Rental Servs., Inc.*, 827 F.2d 252, 255 (7th Cir. 1987) (noting that *In re Uranium Antitrust* limited *Frow* rule "to cases where all the defendants were claimed to be jointly, not severally, liable."). The Court further noted that *Frow* was "mandated by the Court's desire to avoid logically inconsistent adjudications as to liability", however, when different results as to different parties are not logically inconsistent or contradictory, the rationale for the *Frow* rule is lacking." *Id*. at 1257–58. The Court further went on to state that "[w]e view Frow as limited to exclusively joint liability claims or situations where there is a single *res* in controversy." *Id*. at n.40.

More recently, the Seventh Circuit reaffirmed these limitations on *Frow* in *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 951 (7th Cir. 2020) (reversing the district court's denial of a motion for default judgment for abuse of discretion where the "theories of liability of each defendant [did] not require uniformity of judgments."). The Court in *Arwa Chiropractic* noted that different results as to different parties are not logically inconsistent where (1) "defendants are sued jointly and severally," or (2) "the facts and theories of the case do not require uniformity of liability as to different defendants." *Id*. at 951; *see also*, *Krakow Bus. Park v. Locke Lord, LLP*, 135 F. Supp. 3d 770, 785-86 (N.D. Ill. 2015) (finding *Frow* reasoning inapplicable where judgment against one set of defendants "would not necessarily be in logical conflict with a judgment for" another set of defendants); *Khorloo v. John C. Heath Att'y at L., PLLC*, 2020 WL 1530735 at *1 n.1 (N.D. Ill. Mar. 31, 2020) ("In cases involving joint and several liability, there is no barrier against entering a default judgment against one defendant even though another defendant might later prevail on the merits."); *Marshall & Ilsley Tr. Co. v. Pate*,

819 F.2d 806, 812 (7th Cir. 1987) (noting that "we do not have a situation such as in *Frow*, where a narrow 'joint fraud' was alleged with respect to a single *res* in controversy.").

Because Plaintiff is not proceeding on a theory of joint liability and because different results between the Defaulting Defendant and the non-defaulting Defendants would not be logically inconsistent or contradictory, *Frow* does not operate to prevent the Court from issuing a default judgment against some but not all of the defendants. First, Plaintiff does not advance a theory of joint liability (or even joint and several liability) such that issuing a default judgment would be improper at this time. *In re Uranium Antitrust Litig.*, 617 F.2d at 1258 (concluding that, where liability is joint and several, *Frow* does not preclude the entry of default judgment against a group of some but not all defendants). Plaintiff alleges that the Defaulting Defendant and the non-defaulting Defendants should be held individually liable – no Defaulting Defendant liability depends on the liability of the others. *See* [Dkt. 1 ¶¶ 8, 15, 50, 52-53]. Further, because this case does not allege joint liability or joint and several liability, there is no reason for the Court to delay entering a default judgment as to both liability and damages. Indeed, there is no basis for delaying judgment as to damages against the Defaulting Defendant because Plaintiff seeks an award of statutory damages, which precludes the prospect of inconsistent judgments as to damages.

Second, a default judgment would not prejudice the non-defaulting Defendants, as the relief requested in the Motion applies only to Defaulting Defendant and thus would not prejudice the non-defaulting Defendants. Relief does not need to be granted against every Defendant to be effective. *Arwa Chiropractic, P.C.*, 961 F.3d at 951 (crediting plaintiff's argument that defendants are "both directly and independently liable for TCPA violations" and therefore no uniformity of judgment was required). Accordingly, the relief requested by the Motion would not apply to or prejudice any singular defendants. On the contrary, denying a ruling on the Motion would

prejudice Plaintiff because it would give the Defaulting Defendant further opportunities to dispose of their assets and frustrate Plaintiff's recovery. *See In re Uranium Antitrust Litig.*, 473 F. Supp. 382, 390 (N.D. Ill. 1979) ("plaintiff faces the possibility that the defaulting defendants, which are all foreign corporations, may conceal or transfer their assets which are subject to execution by United States courts.").

### e. Plaintiff is Entitled to Injunctive and Monetary Relief.

Awarding statutory damages is both remedial in nature and serves to protect an important public interest. Counterfeiting activity creates enormous economic loss and puts consumers, particularly those purchasing online from unknown sellers, who are deceived into buying misidentified and low-quality counterfeit goods at risk. Thus, it is important to both penalize defendants and try to deter future violations. Plaintiff has expended substantial resources in growing and protecting the YINGTE Mark and brand. [Dkt. 1 at ¶ 11]. The success of the YINGTE brand has resulted in the YINGTE Mark's significant counterfeiting, as evidenced by this very case. Plaintiff has built substantial commercial goodwill in and to the YINGTE Mark and Plaintiff regularly investigates and enforces rights therein. [Dkt. 1 at ¶ 14].

### i. Statutory damages are appropriate in this case.

Under the Lanham Act, a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, the Lanham Act also provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). The lack of information regarding Defaulting Defendant's sales and profits makes statutory damages

particularly appropriate for default cases like the instant case. *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, No. 03 C 4986, 2004 WL 2534378, at *3 (N.D. Ill. Nov. 8, 2004) (citing S. Rep. No. 177, 104th Cong. 1995). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, No. 03 C 4844, 2008 WL 1775512, at *2 (N.D. Ill. Apr. 17, 2008).

### ii. Defaulting Defendant infringement and piracy was willful.

As alleged in Plaintiff's Complaint, Defaulting Defendant enabled and facilitated sales of the Infringing YINGTE Products through at least the Defendant Online Stores, and the Court can infer the Defaulting Defendant's willfulness from this conduct. *Lorillard Tobacco*, 2004 WL 2534378, *7. At a minimum, Defaulting Defendant "showed a reckless disregard" for Plaintiff's rights in the federally registered YINGTE Mark. *Id*. (quoting *Microsoft Inc. v. Logical Choice Computers, Inc.*, No. 99 C 1300, 2001 WL 58950, at *11 (N.D. Ill. Jan. 22, 2001)) (internal citations omitted). Further, this Court has deemed counterfeiting willful when defendants default. *See Burberry Limited, et al. v. The P'ships, et al.*, No. 14-cv-08220, Dkt. Nos. 44-45 (N.D. Ill. Dec. 11, 2014) (unpublished); *Oakley, Inc. v. The P'ships, et al.*, No. 13-cv-02958 Dkt. Nos. 36-37 (N.D. Ill. June 17, 2013) (unpublished).

### iii. A high statutory damages award is appropriate and just.

A Court will determine a statutory damage award under the Lanham Act as it "considers just." 15 U.S.C. § 1117(c). Courts in this and other districts have found further guidance for this determination by looking to the statutory damages provision of the U.S. Copyright Act, 17 U.S.C. § 504(c). *See Lorillard Tobacco*, 2004 WL 2534378, at *10; *Luxottica USA LLC v. The P'ships,*

*et al.*, No. 14 C 9061, 2015 WL 3818622, at *2 (N.D. Ill. June 18, 2015); *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

In the Seventh Circuit, when determining a statutory damage award for a copyright infringement claim, a court will consider "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991) (internal citations omitted). This Court is "not required to follow any rigid formula," but instead "enjoys wide discretion" in determining a statutory damage award. *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote, and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco*, 2004 WL 2534378, at *16.

Courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Light v. Zhangyali*, No. 15 CV 5918, 2016 WL 4429758, at *4 (N.D. Ill. Aug. 22, 2016) (awarded $100,000 in statutory damage award where "Defendant advertises and sells its products worldwide through its online store"); *Luxottica*, at *2 (collecting awards from cases where counterfeiting took place online that found "substantial damages awards appropriate," ranging between $50,000 and $750,000 per mark); *Coach, Inc. v. Ocean Point Gifts*, No. CIV.A.09-4215 JBS, 2010 WL 2521444, at *8 (D. N.J. June 14, 2010) (awarding $200,000 in statutory damages "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. & Burberry USA v. Designers Imports, Inc.*, No. 07 CIV. 3997 (PAC), 2010 WL 199906, at *10 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

Courts have awarded significant statutory damages, including up to the maximum provided by law, to sufficiently deter internet-reseller defendants and others situated like them from engaging in further infringing conduct. *See*, *e.g.*, *Oakley*, No. 13-cv-02958 Dkt. Nos. 36-37 (awarding $2,000,000 in statutory damages per defendant); *Phillip Morris USA Inc. v. Marlboro Express*, No. CV-03-1161 (CPS), 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005) (awarding $2,000,000 in statutory damages based in part on "the need for a substantial deterrent to future misconduct."); *Kiesque, Incorporated v. The P'ships et al.*, 18-cv-7761, Dkt. 56 at 4 (N.D. Ill. May 14, 2019) (entering a default judgment in the amount of $2 million.); *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1347 (7th Cir. 1994), *on reh'g in part*, 44 F.3d 579 (7th Cir. 1995) (noting that statutory damages under § 1117(c) are not merely remedial but serve an important public interest).

Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), in light of guidance provided under *Lorillard Tobacco*, 2004 WL 2534378, at *3-7, and consistent with previous determinations in similar online counterfeiting cases in this District (including with respect to other defaulting defendants in this case), Plaintiff respectfully requests the Court's entry of an award of $100,000.00 against the Defaulting Defendant for counterfeiting of the YINGTE Mark. *See, e.g.*, *Den-Mat Holdings, LLC v. The P'ships et al.*, 20-cv-06194, Dkt. 42 at 5 (N.D. Ill. Dec. 15, 2020) (entering a default judgment in the amount of $250,000); *Benefit Cosmetics LLC, Besttomorrow Store, et al.*, 19-cv-02179, Dkt. 47 at 6 (N.D. Ill. June 5, 2019) (entering a default judgment in the amount of $200,000); [*see also*, Dkt. 52 at 4, ¶ 3 (awarding $100,000 against other defaulting defendants in this case)].

### iv. Plaintiff is entitled to permanent injunctive relief.

Plaintiff also respectfully requests this Court enter a permanent injunction enjoining the Defaulting Defendant from infringing or otherwise violating the Plaintiff's trademark rights in the YINGTE mark, including at least all injunctive relief previously awarded by this Court to the Plaintiff in the TRO and Preliminary Injunction. [Dkt. 17; Dkt. 26]. Further, Plaintiff is entitled to injunctive relief so it can quickly take action against any new online marketplace accounts that are identified, found to be linked to the Defaulting Defendant, and selling Infringing YINGTE Products. *See Oakley, Inc. v. The P'ships, et al.*, No. 13-cv-02958 Dkt. Nos. 36-37 (N.D. Ill. June 17, 2013).

### III. Conclusion

Plaintiff Jun Fang respectfully requests this Court enter default and default judgment against the Defaulting Defendant, award statutory damages in the amount of $100,000 pursuant to 15 U.S.C. § 1117(c), and enter a permanent injunction order prohibiting the Defaulting Defendant from selling Infringing YINGTE Products and transferring all assets in the Defaulting Defendant's financial accounts operated by PayPal, Inc., Amazon, Temu, Shein, AliPay, eBay, Walmart, Payoneer, Joom, Wish/ContextLogic, Skrill, PingPong, Etsy Payments, and Amazon Payments to Plaintiff.

Dated: March 7, 2025

Respectfully submitted,

/s/ Ilya G. Zlatkin
Ilya G. Zlatkin
Zlatkin Cann Entertainment
4245 N. Knox Ave.
Chicago, IL 60641
ilya@zce.law
Ph. (312) 809-8022
Fax (312) 809-6918

*Counsel for Plaintiff*